AASIR AZZARMI
401 E 109 St #1A
Los Angeles, CA 90061
323-632-8531
Plaintiff in Pro Per

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AASIR AZZARMI,<br>Plaintiff,<br>vs.<br>HOSANA WURTZ,et.al,<br>Defendants. | Case No.: 2:20-cv-00607-DMG-JCx<br>**DECLARATION OF AASIR AZZARMI ESTABLISHING PREVIOUS AUTHENTICATION OF THESE EXHIBITS IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION ON 1 DEFAMATION CLAIM (DEF. EILEEN BRASHARES) & 1(of 3) 1981 CLAIM FOR TERMINATION OF PURSER PROMOTIONAL CONTRACT** |

I, AASIR AZZARMI, being first duly sworn and state as follows:

1. I am the Pro Se Plaintiff Aasir Azzarmi, prosecuting this case and have personal knowledge of the exhibits and documents submitted, filed, appended, and attached to this Declaration and to Plaintiff's Partial Motion for Summary Judgment or In the Alternative, Summary Adjudication.

2. I have personal knowledge of the events described in this Declaration and the information set forth in this Declaration is true and correct.

3. I offer this Declaration in Support of Plaintiff's Motion for Partial Summary Judgment or IN THE ALTERNATIVE SUMMARY ADJUDICATION. I am competent to testify as to all matters herein if called to do so.

4.Attached hereto as **Exhibit B** is a true and correct copy of the "**WRITTEN COACHING**" that Defendant Charlotte Ling issued to Plaintiff on 08/30/2016, less than 24 hours after he formed a Purser Promotional Contract with his employer on 08/29/2016. Plaintiff has personal knowledge of this document because he saw it, received it and used it since 2016, while an employee of Delta Air Lines, Inc. **This document (along with DELTA000009, Giacomo Suriano's testimony and other judicial admissions in these exhibits, EASILY 100% prove that Plaintiff was discriminated against because of his race, because Nathan Woody, Nicholas DuPont, and Barak Braun, similarly situated white male flight attendants' Purser Promotional contracts were not terminated by their managers, when they had IVC, FVCs, "crew conflicts" and actually violated Def. Delta company policies. )proves Plaintiff's 1981 CLAIM for TERMINATION OF PROMOTION CONTRACT** by Defendant Charlotte Ling had no valid basis to issue Plaintiff this "**WRITTEN COACHING" because THERE WAS NO VIOLATION OF COMPANY POLICY. Def. Ling's reasoning was that Plaintiff was "loud" and "direct" and told Plaintiff it was because she perceived him to be "loud" and "direct" and "aggressive" because he is "Latino" and his "culture." Plaintiff reported that Def. Ling told Plaintiff that she perceived him to be "loud" and "direct," not based on any** (Delta 000 727) **evidence or facts, but based solely on her stereotypical perceptions of how** ("Delta 000 725) **members of Plaintiff's race behaved. Def. Ling imputed her prejudicial, racially discriminatory biases, generalizations, and stereotypes of how a**

*(See "Delta 000725" & "Delta 000727" in Exhibit B-20*

**member of the "Latino" race behaves onto Plaintiff, who is "Latino," but is also an individual who she doesn't know personally, nor has she ever witnessed Plaintiff being "loud" and or "direct," at any time and she has no evidence to prove that she ever witnessed Plaintiff being "loud" or "direct." In fact, Def. Ling's manager, Director Samuel Johnson, OVERTURNED Def. Ling's "WC" aka/or "WRITTEN COACHING" because he determined that**

**1) Def. Charlotte Ling disparately disciplined Plaintiff for the fact that Defendant Hosana Wurtz received only an "IVC" (Informal Verbal Coaching) and that Plaintiff's "actions were similar."**

**2) Def. Ling did not interview all of the witnesses**

**3)made a judgment that was not based on evidence**

Def. Ling failed to cite, specify, prove, or identify ANY VIOLATION OF DELTA COMPANY POLICY that PLAINTIFF VIOLATED to warrant issuing Plaintiff a "WRITTEN COACHING," which effectively terminated his Purser promotion contract. (see Exhibit B-1, to see Delta Director Samuel Johnson's comments in Delta Bates Stamped Document labelled "DELTA000009." Def. Ling knew that if she issued Plaintiff a "WRITTEN COACHING," she could attempt to justify terminating Plaintiff's Purser promotion contract for a pretextual reason. However, her pretextual reason DID NOT WITHSTAND SCRUTINY from even her own manager, Samuel Johnson, and/or Def. Delta Air Lines, Inc. and therefore Plaintiff is ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON HIS 1981 CLAIM FOR DEF. LING'S TERMINATION OF PLAINTIFF'S PURSER PROMOTION CONTRACT.

5. Attached hereto as **Exhibit B-1 is a true and correct copy of "DELTA000009,"** and this document was produced by Defendant Delta in the ordinary course of discovery and received from Defendant Delta Air Lines, Inc's

attorney Ira Rosenstein on October 1, 2018. Plaintiff has personal knowledge of this document because he saw it, received it and used it since 2016, while an employee of Delta Air Lines, Inc. See 31 Wright & Gold, Federal Practice and Proc: Evidence § 7105 ("[a]uthentication can also be accomplished through judicial admissions such as stipulations, pleadings, and production of items in response to subpoena or other discovery request"). This document proves that Defendant Charlotte Ling NOT ONLY DISPARATELY DISCIPLINED PLAINTIFF, BUT THAT SHE HAD NO REASON TO DISCIPLINE HIM, AS HE DID NOT VIOLATE ANY COMPANY POLICY. FURTHERMORE, FSM GIACOMO SURIANO'S TESTIMONY IN EXHIBIT B-2 PROVES THAT **EVEN IF** PLAINTIFF HAD EXPIRED AND/OR ACTIVE **IVCS AND FVCS** IN HIS PERSONNEL FILE, **THAT DID NOT PRECLUDE HIM FROM BECOMING A PURSER** AND **DEF. LING HAD NO REASON TO TERMINATE PLAINTIFF'S PURSER PROMOTION CONTRACT** THAT PLAINTIFF FORMED WITH HIS EMPLOYER, DELTA AIR LINES, INC. ON 08/29/2016. IT IS AN UNDISPUTED FACT. (SEE "EXHIBIT 3, 3.1, 3.2, AND 3.3" WHICH ARE DOCMENTS AUTHENTICATED BY FSM GIACOMO SURIANO'S TESTIMONY IN EXHIBIT B-2). IT IS AN UNDISPUTED FACT THAT SIMILARLY SITUATED WHITE MALE FLIGHT ATTENDANT, NATHAN WOODDY HAD AN ACTIVE FVC IN HIS PERSONNEL FILE AND HIS PURSER PROMOTION CONTRACT WAS NOT TERMINATED BY HIS FSM MANAGER, GIACOMO SURIANO. THEREFORE, ANY REASONABLE FACT FINDER WOULD CONCLUDE THAT DEF. LING NOT ONLY HAD A MOTIVE TO TERMINATE PLAINTIFF'S PURSER CONTRACT, BUT THAT THE REASONS SHE GAVE TO EFFECTUATE THE TERMINATION OF PLAINTIFF'S PURSER PROMOTION CONTRACT WAS NOT ONLY

1) NOT A VIOLATION OF DELTA COMPANY POLICY BUT WAS

2) AFFIRMATIVELY, DEF. LING'S PERSONAL RACIAL "PERCEPTION" (AS DEF. ITTOUNAS TESTIFIED TO ) THAT PLAINTIFF WAS "LOUD" AND "DIRECT" BECAUSE OF HIS RACE AND CULTURE. **AND...**3) THERE ISN'T AND WASN'T ANY DELTA POLICY VIOLATION FOR BEING "LOUD" AND/OR DIRECT. (**SEE NOTARIZED DECLARATIONS OF STEPHANIE ACOSTA IN EXHIBIT B-11** ¶9 & ~~ERIKA LEE at B-12 ¶~~ . Defendant Delta's attorney Ira Rosenstein made a judicial admission regarding this **"WRITTEN COACHING" as SPECIFIC** BASIS of Plaintiff's Purser Promotion Contract being terminated **on 08/30/2016.** **(see Exhibit B-7 for Delta's attorney Ira Rosenstein's judicial admission** ¶113,122,¶123

6. Attached hereto as **Exhibit B-2 are true and correct copies of pages from the transcript of the deposition of Defendant Delta's "FSM" Managing Agent Giacomo Suriano** on August 8, 2018, , which pages have been authenticated by the Certificate of Reporter. Nathan Wooddy was at the deposition, gave this deposition to Plaintiff and authenticated it. But more than that, Plaintiff specifically chose to use the deposition copy from PACER, government website, because it is self-authenticating and Delta used it to support their motion for summary Judgment(which means Giacomo Suriano's testimony are now judicial admissions for Plaintiff, in this case, Motion for Partial Summary Judgment). Defendant Delta won Summary Judgment in Wooddy v. Delta and Delta therefore is precluded by judicial estoppel from stating that these documents are not valid.

See American Title Ins. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (***admissions in a summary judgment motion are judicial admissions***). Fed. R. Evid. 902 (self-authenticating documents need no extrinsic foundation)). **Plaintiff** has personal knowledge of this document because Nathan Wooddy gave him the same exact deposition transcript that is on PACER. Nathan Wooddy was at the deposition, gave this deposition to Plaintiff and authenticated it. But more than that, Plaintiff specifically chose to use the deposition copy from PACER, government website, because it is self-authenticating and Delta used it to support their motion for summary Judgment(which means Giacomo Suriano's testimony

are now judicial admissions for Plaintiff, in this case, Motion for Partial Summary Judgment).

7. Attached hereto as **Exhibit B-3 are true and correct copies of pages from the transcript of the deposition of Defendant Delta's "BASE DIRECTOR" Managing Agent David GilMartin** on August 8, 2018, , which pages have been authenticated by the Certificate of Reporter. Nathan Woody was at the deposition, gave this deposition to Plaintiff and authenticated it. But more than that, Plaintiff specifically chose to use the deposition copy from PACER, government website, because it is self-authenticating and Delta used it to support their motion for summary Judgment(which means Giacomo Suriano's testimony are now judicial admissions for Plaintiff, in this case, Motion for Partial Summary Judgment). Defendant Delta won Summary Judgment in Wooddy v. Delta and Delta therefore is precluded by judicial estoppel from stating that these documents are not valid. **Plaintiff** has personal knowledge **of this document because Nathan Wooddy gave him the same exact deposition transcript that is on PACER.**

8. Attached hereto as **Exhibit B-4 are true and correct copies of pages from an email Plaintiff sent to Def. Eileen Brashares and her husband, Chris Catania, in October 2018, asking them to cease and desist from publishing, unprivileged false statements of facts about Plaintiff to third parties, including Def. Delta Air Lines, as they had been doing since October 2016. Plaintiff** has personal knowledge **of this document since he wrote this email document. In fact,** DELTA000737."is an undisputed reflection of how Defendant Delta's Managing agents, Los Angeles Director Andrea Misserian, New York Base Manager Bernard Rawls, Defendant Charlotte Ling in Detroit and Corporate Director Tanya Morgan ***meritoriously regarded Plaintiff's professional reputation,*** as he was known as a **"TOP PERFOMER" on NOVEMBER 10,** 2016. However, **5 days later, Defendant Eileen Brashares, on NOVEMBER 15,**

**2016,** defamed Plaintiff to his employer, colleagues, managing agents when Def. Brashares accused Plaintiff of committing a Federal Crime and irreparable harmed his reputation and his professional reputation was destroyed based on her unprivileged, false statements of purported facts she published to third parties on November 15, 2016. IT IS AN UNDISPUTED FACT, evidenced by "DELTA000164," that Defendant Delta produced to Plaintiff during the normal course of discovery, to which they admit, that **on NOVEMBER 23, 2016, 8 DAYS AFTER, Def. Brashares DEFAMED** PLAINTIFF to Linda Dunwoody and/or Delta Air Lines, Inc, etc., Managing Agents Phillip Vieth and Director Samuel Johnson republished Def. Eileen's defamatory statements and stated that the "nucleus of this incident is the behavior" of Plaintiff and that "Eileen Brashares, Revenue Passenger 25 C" was "involved" and that Plaintiff was "combative." (Def. Brashares stated that Plaintiff's behavior was "RUDE AND OBNOXIOUS AT EVERY TURN" in Exhibit B-1 and B-8 and "DELTA000451-000454). The undisputed fact **in this Defamation claim is :**

**1)** It is undisputed material fact that Plaintiff was regarded as a "TOP PERFORMER" by Delta's Managing Agents in 3 different U.S. cities (Los Angeles, New York, Detroit) on November 10, 2016 and Los Angeles Base Director Andrea Misserian published this undisputed fact in an email to Corporate Director Tanya Morgan on 11/10/2016. Plaintiff and Def. Delta's agents agree that Plaintiff's professional reputation was that of a "TOP PERFORMER" on 11/10/2016.

2) It is undisputed material fact that Def. Brashares published unprivileged statements of purported facts to third parties about Plaintiff on 11/15/2016.

3) It is undisputed material fact that on November 23, 2016, 8 days after Def. Brashares PUBLISHED HER UNPRIVILEGED STATEMENTS OF PURPORTED FACTS TO PLAINTIFF's EMPLOYER (Def. Delta), Delta's managing agents no longer considered Plaintiff's previous professional reputation

as a "TOP PERFORMER" relevant and/or valid and/or true. Immediately, on 11/23/2016, Def. Delta and its managing agents describe Plaintiff as "combative" and that the "nucleus" of this "incident," which Plaintiff testifies NEVER HAPPENED, was revolved around Plaintiff's "BEHAVIOR."

4) It is an undisputed material fact that On 01/04/2017, less than 2 months after Def. Brashares published unprivileged statements of purported facts to third parties about Plaintiff on 11/15/2016, Plaintiff received a "FCAN" or "FINAL WARNING," even when he had nothing in his personnel file. (See Corporate Director Tanya Morgan's email to Plaintiff). This "FCAN," which revoked Plaintiff's material benefits (pass travel benefits) were based on Def. Brashares unprivileged, defamatory per se statements about Plaintiff to third parties, including Def. Delta, that all third parties who read Def. Brashares' unprivileged purported statements of facts, reasonably understood Def. Brashares to be referring to Plaintiff. It is also an undisputed material fact that Def. Brashares defamatory was a substantial motivating factor in causing the "FCAN" to be issued to Plaintiff, as the "FCAN" was not issued based on Richard Lorich's 10/30/2016 unprivileged statements of purported facts because Richard Lorich's statement were filled with factually inaccurate statements which were controverted by the statements of the other Delta employee eyewitnesses. Defendant Delta relied on Def. Brashares' published unprivileged statements of purported facts to issue Plaintiff the "FCAN" on 01/04/2017.

5. Finally, It is an undisputed material fact that Def. Delta's attorney, David Secemski testified (made judicial admission) that the "FCAN" was the "reasons" Plaintiff was "terminated."**(See deposition transcript in Exhibit A-2)**

**9.** Attached hereto as **Exhibit B-5** is a true and correct copy an email Plaintiff sent to Def. Eileen Brashares and her husband, Chris Catania, in October 2019, asking them to cease and desist from publishing, unprivileged false statements of facts about Plaintiff to third parties, including Def. Delta Air Lines, as they had been

doing since October 2016 and how Plaintiff emailed them a previous Cease and Desist Letter in October 2018, but they continue to republish Def. Eileen Brashares unprivileged false statements of purported facts about Plaintiff to third parties stating that this "Event" (the Federal Crime they accused Plaintiff of committing in October 2016) actually "happened" in October 2016. **Plaintiff** has personal knowledge **of this document** since he wrote this email document. Def. Brashares has and had no admissible evidence to prove that this "event" where Plaintiff committed a Federal Crime actually happened at any time in October 2016, but Def. Brashares republished defamatory per se statements about Plaintiff in October 2019, to Stephanie Acosta and Kristina Kiefer (both airline industry professionals) show her malice because her husband published that they don't "regret," making these unprivileged defamatory per se statements about Plaintiff to third parties, whereby all third parties who read Def. Brashares' unprivileged purported statements of facts AGAIN in October 2019, also reasonably understood Def. Brashares to be referring to Plaintiff, as **Kristina Kiefer knows who Plaintiff is, HEARD about this alleged "event" where** Plaintiff **allegedly committed a Federal Crime on October 29, 2016 from RICHARD LORICH (see DELTA000129 or DELTA000317) but did not witness it herself. Stephanie Acosta knew Def. Brashares republication of her** unprivileged false statements of purported facts about Plaintiff was about Plaintiff because Stephanie Acosta, an ex Delta employee, served Chris Catania with documents related to this Defamation claim. (See Stephanie Acosta Notarized Declaration where she authenticated this 10/2019 republication of Def. Brashares' defamatory per se statements about Plaintiff). Plaintiff is hereby testifying that he was NOT the individual that Def. Brashares has defamed and has falsely accused of committing this Federal Crime in October 2016, however Def. Brashares continues republishing her false statements of purported facts to third parties, including Delta Air Lines, Stephanie Acosta, Laura Davis, etc where she imputes some other

passenger's alleged "rude and obnoxious behavior" ONTO PLAINTIFF, when Plaintiff was not physically present on any of the days that this "incident" allegedly happened.

**10.** . Attached hereto as **Exhibit B-6 is a true and correct copy "FACT SHEET: RELIABILITY,** which has been authenticated by the testimony of Defendant William Ittounas and Defendant Delta's attorney, David Secemski from the transcript of the deposition deposition excerpts located in **Exhibit A-2, A-14 and A-15**, taken on October 3, 2018, December 5, 2018 and February 6, 2019, , which pages have been authenticated by the Certificate of Reporter . Plaintiff has personal knowledge of this document.

**11. Attached hereto as Exhibit B-7 is a true and correct copy "Answer Second Amended Complaint", Delta's attorney Ira Rosenstein's judicial admission in Exhibit B-7 for ¶** ) Not only did Ira Rosenstein, on behalf of Def. Delta, produce it to Plaintiff's previous attorney, John Luke, in August 2017, which Plaintiff witnessed, Plaintiff has also used this document in the past. **Plaintiff** has personal knowledge **of this document.** Furthermore, the documents in this Exhibit are self-authenticating because Def. Delta, through their attorney, filed this onto a government website, PACER, and these are now public documents. Fed. R. Evid. 902 (self-authenticating documents need no extrinsic foundation));

**12.** Attached hereto as **Exhibit B-8** is a true and correct copy Delta's attorney Ryan Langel's judicial admission in Exhibit B-8 to a state agency regarding Plaintiff being discriminated against. ( See pages 8 and 9 ) where Def. Delta's attorney makes Judicial admissions in support of Def. Ling, Def. Ebert's TERMINATION OF PLAINTIFF'S PURSER PROMOTION CONTRACT. Plaintiff has personal knowledge of this document, as he received this document at some point in 2017 from New York Division of Human Rights, a government agency and used this document in the past.

13. Attached hereto as **Exhibit B-9** is a true and correct **copy Delta's "SENIORITY LIST** . Plaintiff has personal knowledge of this document because he has used it, seen it, read it while employed at Def. Delta Air Lines, Inc. It was received by Plaintiff from a Delta Air Lines, Inc., employee. This Seniority list proves that Nicholas DuPont and Barak Braun, two similarly situated white male employees, who both had active and/or expired IVCs and FVCs in their personnel file, were allowed to be promoted to Purser and their FSM Managers did not terminate their Promotional contract, which is another method of proving an inference of intentional discrimination since Def. Ling , Def. Ebert and/or Delta Air Lines, Inc. disparately treated and attempted to disparately discipline Plaintiff as a pretext to racially discriminate against him to effectuate the blocking and/or terminating of his Purser promotional contract on 08/30/2016.

14. Attached hereto as **Exhibit B-10 are true and correct copies of pages from the transcript of the deposition of Defendant Delta's formerly similarly situated white male flight attendant, Nathan Woody,** on August 8, 2018, which pages have been authenticated by the Certificate of Reporter. Plaintiff has personal knowledge of this document because he has used it, seen it, read it before. See American Title Ins. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (***admissions in a summary judgment motion are judicial admissions***). Fed. R. Evid. 902 (self-authenticating documents need no extrinsic foundation)). **Plaintiff** has personal knowledge of this document because Nathan Wooddy gave him the same exact deposition transcript that is on PACER. Nathan Wooddy was at the deposition, gave a copy of the same deposition transcript to Plaintiff and authenticated it. But more than that, Plaintiff specifically chose to use the deposition copy from PACER, government website, because it is self-authenticating and Delta used it to support their motion for summary Judgment(which means Giacomo Suriano's testimony as long as every Delta Managing Agents' testimony in Wooddy v. Delta are now judicial admissions for Plaintiff, to be use in this case, to support his Motion for Partial Summary Judgment. Plaintiff moves the Court to take judicial notice of Federal Case: ***Wooddy v. Delta Air Lines, Inc. in Florida Southern District Court, 1:17-cv-23808.***

15.Attached hereto as **EXHIBIT B-11** is true and correct copy of **STEPHANIE ACOSTA's NOTARIZED DECLARATION** as to her personal knowledge, as she was an ex-employee of Delta Air Lines, Inc. and is familiar with Delta company policies and knows that being "loud" is not a violation of Delta company policy. Plaintiff received this Notarized Declaration directly from Stephanie Acosta and has used it before, Stephanie Acosta's, who's witness testimony controverts Def. Ling, Def. Ebert, and Def. Delta's pretextual reasons for TERMINATING PLAINTIFF'S PURSER PROMOTION CONTRACT, as Def. Ling and Def. Ebert had NO VALID REASON TO TERMINATE THIS PROMOTION CONTRACT, as Director Samuel Johnson, overturned Def. Ling's "WC" or "Written Coaching,"(see Exhibit B1 and/or "DELTA000009") ***but, however, Plaintiff's employer, Def. Delta Air Lines, never attempted to form another PROMOTION CONTRACT, after knowing that Def. Ling racially discriminated against Plaintiff by terminating his Promotion contract on 08/30/2016. Instead, Def. Delta supported Def. Ling and Def. Ebert and aided and abetted and empowered Def. Ling and Def. Ebert to illegally discriminate against Plaintiff because of his race.***

**16.** Attached hereto as **EXHIBIT B-12** is a true and correct copy of **Erika Lee's Notarized Declaration** as to her personal knowledge, as she is a CURRENT employee of Delta Air Lines, Inc. and is familiar with Delta company policies and knows that being "loud" is not a violation of Delta company policy. Plaintiff received this Notarized Declaration from Erika Lee, a Delta employee, and has used it before. Erika Lee, who's witness testimony, controverts Def. Ling, Def. Ebert, and Def. Delta's pretextual reasons for TERMINATING PLAINTIFF'S PURSER PROMOTION CONTRACT, as Def. Ling and Def. Ebert had NO VALID REASON TO TERMINATE THIS PROMOTION CONTRACT, as Director Samuel Johnson, overturned Def. Ling's "WC" or "Written Coaching,"(see Exhibit B1 and/or "DELTA000009") ***but, however, Plaintiff's***

***employer, Def. Delta Air Lines, never attempted to form another PROMOTION CONTRACT, after knowing that Def. Ling racially discriminated against Plaintiff by terminating his Promotion contract on 08/30/2016. Instead, Def. Delta supported Def. Ling and Def. Ebert and aided and abetted and empowered Def. Ling and Def. Ebert to illegally discriminate against Plaintiff because of his race.***

17. Attached hereto as **Exhibit B-13 are true and correct copies of pages from the transcript of the deposition of Defendant Delta Managing Agent, Maritza Evans,** on August 8, 2018, which pages have been authenticated by the Certificate of Reporter. Plaintiff has personal knowledge of this document because he has used it, seen it, read it before. See American Title Ins. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988) (***admissions in a summary judgment motion are judicial admissions***). Fed. R. Evid. 902 (self-authenticating documents need no extrinsic foundation)). **Plaintiff** has personal knowledge of this document because Nathan Wooddy gave him the same exact deposition transcript that is on PACER. Nathan Wooddy was at the deposition, gave a copy of the same deposition transcript to Plaintiff and authenticated it. But more than that, Plaintiff specifically chose to use the deposition copy from PACER, government website, because it is self-authenticating and Delta used it to support their motion for summary Judgment(which means Giacomo Suriano's testimony as long as every Delta Managing Agents' testimony in Wooddy v. Delta are now judicial admissions for Plaintiff, to be use in this case, to support his Motion for Partial Summary Judgment. Plaintiff moves the Court to take judicial notice of Federal Case :***Woody v. Delta Air Lines, Inc. in Florida Southern District Court, 1:17-cv-23808.***

*18.* Attached hereto as **Exhibit B-14 are true and correct copies of photos from the Defendant Delta's Managing Agent , FSM Charlotte Ling("Def. Ling") personal Facebook page. Plaintiff has personal knowledge of these photos and can and will identify FSM Charlotte Ling and knows that Def. Ling is a white woman and this is her Facebook page.**

*19.* Attached hereto as **Exhibit B-15 are true and correct copies of photos from the Defendant Delta's Managing Agent , HR Manager Courtney Ebert's ("Def. Ebert's) personal Facebook page. Def. Ling is a white woman. Plaintiff has personal knowledge of these photos and can and will identify HR Manager Courtney Ebert and knows that Def. Ebert is a white woman and this is her Facebook page.**

#4

(20) Attached hereto as **Exhibit B-16 are true and correct copies of photos from the Defendant Delta's similarly situated white male flight attendant/Purser, Barak Braun personal Facebook page. Barak Braun is a similarly situated white male whose Promotion contract was not terminated by his FSM, before October 16, 2016this proves Plaintiff's 1981 claim. Plaintiff has personal knowledge of these photos and can and will identify Barak Braun and knows that Barak Braun is a man and that and this is his Facebook page.** (See #23 for Fed. court documents where Barak Braun caught stealing & violating Delta policy.

21.. Attached hereto as **Exhibit B-17 are true and correct copies of photos from the Defendant Delta's similarly situated white male flight attendant/Purser, Nicholas DuPont personal Facebook page. Nicholas DuPont is a similarly situated white male whose Promotion contract was not terminated by his FSM before October 16, 2016, this proves Plaintiff's 1981 claim. Plaintiff has personal knowledge of these photos and can and will identify Nicholas DuPont and knows that Nicholas DuPont is a white man and that and this is his Facebook page.**

(22) Attached hereto as Exhibit B18 are true and correct copies of a Federal Lawsuit involving Def. Delta similarly situated white male flight attendant, Henry Kashfi, who was a Purser and his Purser promotion contract was not terminated based on accusations of stealing. Plaintiff was friendly with Henry Kashfi and Henry Kashfi told Plaintiff, "I voluntarily withdrew from the Purser Promotion program because I wanted to fly (work) Tel-Aviv flights." Henry Kashfi, a similarly situated white male flight attendant, Purser promotion contract was not blocked and/or terminated based on violations of Company policy that many witnessed him violating. Plaintiff moves this court to take Judicial Notice of Case 1:12-cv-00423-ACK-BMK-Doc 43 Filed 08/05/13, Page 17 of 34. This document is self-authenticating as it is filed on PACER, and a public record.

(23) Attached hereto as Exhibit B-19 are true and correct copies of a Federal lawsuit involving Def. Delta and Delta flight attendant Barak Braun stealing & violating Delta policy, in Case 1:16-cv-01327-NGG

24. Attached hereto as Exhibit B-20 are true and correct copies of "DELTA000725" & "DELTA 000726". Both parties agree that Def. Delta produced these documents in the course of discovery and Plaintiff received these DELTA BATES STAMPED DOCUMENTS from Def. Delta's attorney, Ira Rosenstein on or around 10/1/2018. Plaintiff has personal knowledge of these documents because he wrote it, emailed it and sent it on Defendant Delta's email server (arturo.pimentel@delta.com) to Defendant Ling's Director (boss) Samuel Johnson to his Delta email (samuel.johnson@delta.com) where Plaintiff in 2016 explained to Samuel Johnson that Def. Ling used her stereotypical "perceptions" about Plaintiff's race to conclude that he was "LOUD" and "DIRECT" because he is "Latino" and that is his "culture." Def. Ling TERMINATED his PURSER PROMOTION CONTRACT by effectively issuing him a "WRITTEN COACHING," where it was later determined by Def. Ling's boss, Director Samuel Johnson, that Plaintiff was disparately disciplined by Def. Ling when Plaintiff never violated any Def. Delta company policy because allegedly being perceived as "loud" (especially when OFF DUTY) and "direct" are NOT VIOLATIONS OF DELTA COMPANY POLICY AND CAN NOT BE CITED AS VIOLATIONS, as being "loud" and/or "direct" is NOT A SPECIFIC VIOLATION REFERENCED IN ANY DELTA EMPLOYEE MANUAL or POLICES AND PROCEDURES HANDBOOK. VP of IFS (Vice President of In-Flight Services aka Flight Attendants Department at Delta) James Sarvis told Plaintiff that being "perceived" as "LOUD" and/or "DIRECT" is not a VIOLATION OF ANY DELTA AIR LINES INC POLICY , and showed Plaintiff in the Employee manual where being "direct" is actually ENCOURAGED AT DELTA AIR LINES INC.

25. Attached hereto as **Exhibit B-21** are true and correct copies of the Complaint of a Federal lawsuit of Defendant Delta's former flight attendant, Tracy Allen, in case 1:18-cv-00002-PKC-PK, Document 37, pages 34-36, specifically LINE 178 "DELTA TERMINATED MS.ALLEN ON OR ABOUT NOVEMBER 8, 2017,WHICH IS ALSO THE DATE THAT MS. ALLEN RECEIVED HER ACCEPTANCE INTO DELTA'S PRESTIGIOUS PURSER PROGRAM." Plaintiff moves this Court to take Judicial Notice of this Court document ***1:18-cv-00002-PKC-PK, Document 37, pages 34-36, in EXHIBIT B-21,*** per Federal Rules of Evidence. This document is evidence that in the year 2017, Def. Delta began interviewing flight attendants to FORM PURSER PROMOTION CONTRACTS with them in the year 2017. However, after Defs. Ling & Ebert disparately discriminated against Plaintiff because of his race, and TERMINATED HIS PURSER PROMOTiON CONTRACT by issuing him a "WRITTEN COACHING," Def. Delta NEVER MADE ANY EFFORT TO REMEDY the DISPARATE DISCRIMINATION AFTER Defs. Ling's "WC" or "WRITTEN COACHING" was OVERTURNED as unwarranted and based on the fact that Plaintiff never violated any Delta policy. Defendant Delta could have promised to form another Purser Promotion Contract with Def. Delta in 2017 and to secure him a spot in the 2017 training class, without having to go through the entire interview process again. Plaintiff asked Def. Delta if there was any possibility to re-form this Promotion contract that was terminated as a result of Def. Ling and Def. Ebert's racially motivated discrimination, for the year 2017 when they stated they would be interviewing to form more PROMOTION CONTRACTS. Although originally Def. Delta Air Lines, Inc., meritoriously believed Plaintiff was the "Best of the best" (Managing Agent Giacomo Suriano deposition testimony) when Def. Delta formed the Purser Promotion contract with Plaintiff on 08/29/2016, Defs. Ling and Ebert blocked, impaired and terminated Plaintiff's Purser Promotion contract, less than 24 hours after the

formation of the contract because they believed, Plaintiff because of his race, was NOT worthy of being promoted to Purser because he was "loud," "ghetto Puerto RIcan," "had an accent," that Latinos have "no class" and "start alot of drama on the airplane," etc. Before and after Plaintiff formed this contract with Def. Delta on 08/29/2016, Defs. Ling and Ebert made racially degrading comments towards Plaintiff and other members of his race, calling Hispanics "cockroaches," "horny bastards," stating that "Hispanic men are all rapists," (Trump comment) and calling Plaintiff a "mongrel." After Plaintiff's "Written Coaching" was overturned, Def. Delta, in 2017, began interviewing other candidates to form Promotion Contracts but never renewed Plaintiff's contract. This document in Exhibit B-21 proves that Defendant Delta did interview other similarly situated flight attendants to FORM PURSER PROMOTION CONTRACTS with other similarly situated white flight attendants, such as Tracy Allen. Tracey Allen, a similarly situated white female flight attendant, FORMED A PURSER PROMOTION CONTRACT with Def. Delta Air Lines, Inc in the year 2017. However, Plaintiff was excluded, blocked and denied another opportunity to form a PURSER PROMOTION CONTRACT in 2017. BUT FOR Def. Ling & Def. Ebert's racially motivated "Written Coaching,"which was subsequently deemed as unwarranted and overturned by Base Director Samuel Johnson, Plaintiff's Purser Promotion Contract would NEVER HAVE BEEN TERMINATED on 08/30/2016, as Plaintiff was never "loud," the "Written Coaching" was based solely on Def. Ling's racial "perceptions" about Latinos which she attributed to Plaintiff because of his race, and the fact that Plaintiff never violated any Delta policy. Furthermore, Def. Delta later adopted, ratified, enforced, empowered, and endorsed Def. Ling and Ebert racial discrimination by refusing to remedy their racially motivated TERMINATION OF PLAINTIFF'S PURSER PROMOTION CONTRACT and by NOT OFFERING TO FORM A PURSER PROMOTION CONTRACT WITH PLAINTIFF 2017, but yet forming Purser promotion contracts with Tracey

Allen, a similarly situated white female flight attendants. Def. Delta refusal to remedy the situation in good faith and refusal to promote Plaintiff based on his race and/or an act of retaliation, as Plaintiff filed an EEOC complaint on 10/02/2016.

26. Attached hereto as Exhibit B-22 are true and correct copies of documents produced by Defendant Delta's of a Federal lawsuit of Defendant Delta's former flight attendant, Eva Lennert Gonzalez, a similarly situated white female flight attendant (see her deposition testimony where she testifies to her race) , in case 1:11-cv-01459-PKC-PK, Document 20 and all exhibits attached to Def. Delta's Motion for Summary Judgment. Defendants' lawyer authenticates all of these Delta Bates stamped documents. Plaintiff moves this Court to take Judicial Notice of this Court document 1:11-cv-01459-PKC-PK, Document 20 per Federal Rules of Evidence. These JUDICIAL ADMISSIONS in this SUMMARY JUDGMENT MOTION, as evidenced by these AUTHENTICATED EXHIBITS, further prove that Plaintiff, a Hispanic male, was disparately disciplined with a "FINAL WARNING" or "FCAN" for allegedly "causing a scene" "Delta000319" (Richard Lorich's words which Def. Brashares and Def. Ling and Def. Ebert perpetuated) while allegedly traveling as a "NON REV," when Eva Lennert-Gonzalez, a Hungarian born similarly situated "blond"white female was ONLY giving "DISCIPLINARY PROBATION" (See "DELTA000592," "ELG124," ""DELTA000590" "DELTA000599," "DELTA000596", etc.) and Eva's flight benefits were never revoked until she was suspended pending termination.

Plaintiff was also DISPARATELY DISCIPLINED BECAUSE OF HIS RACE because Plaintiff's pass travel benefits, which he paid $50.00 yearly fee, were revoked when he was issued "FCAN," when Eva Lennert-Gonzalez, a Hungarian born similarly situated "blond"white female was ONLY giving "DISCIPLINARY PROBATION" (See "DELTA000592," "ELG124," ""DELTA000590"

"DELTA000599," "DELTA000596") and her PASS TRAVEL or FLIGHT BENEFITS were NOT REVOKED FOR THE SAME ALLEGED VIOLATION OF COMPANY POLICY, "causing a scene" while allegedly non-revving and/or traveling on Delta's flight benefits, and where both employees are essentially being reprimanded for OFF DUTY CONDUCT. To further prove RACIAL DISCRIMINATION AND RETALIATION, Eva Lennert-Gonzalez, a Hungarian born similarly situated "blond"white female 'flight only had **"her flight and medical benefits" "suspended" on "04/07/2009" when she was suspended, after she was sent a "letter of abandonment," for not returning Delta's calls, as evidenced by "DELTA000629" in Exhibit B-21.** As evidenced by authenticated document "ELG124," Eva Lennert Gonzalez'stated that **" I was told that I was going to be placed on PROBATION ...and that I COULD LOSE MY FLIGHT BENEFITS BECAUSE OF THE SANTO DOMINGO issue."** Eva Lennert Gonzalez, because she is white, never lost her ***"flight benefits,"*** and was treated better, and not disparately discipline for the same alleged violation as Plaintiff was disciplined with a "FINAL WARNING" or "FCAN" and had his flight benefits revoked. In sum, Plaintiff, because of his race, was NOT ONLY MORE SEVERELY DISCIPLINED FOR THE SAME ALLEGED VIOLATION, but his MATERIAL BENEFITS WERE REVOKED, when a similarly situated white female flight attendant's flight benefits were not revoked. THIS IS AUTHENTICATED ADMISSIBLE EVIDENCE of another example of how Plaintiff's race is a substantial motivating factor in Def. Delta's employment decisions, which lead to TERMINATION OF CONTRACTS, where similarly situated white employees CONTRACTS ARE NOT TERMINATED.

ANOTHER EXAMPLE OF RACIALLY DISPARATE DISCIPLINE IN THE SAME EXHIBIT B-22: ADRIENNE DANKU, another similarly situated white female flight, who was Eva Lennert

Gonzalez' friend, who engaged in the SAME ALLEGED CONDUCT "causing a scene" while traveling non-rev, DID NOT HAVE HER PASS TRAVEL BENEFITS REVOKED NOR WAS SHE DISCIPLINED AT ALL for the SAME ALLEGED VIOLATION that Def. Delta gave Plaintiff a "FCAN" for and later TERMINATED HIS EMPLOYMENT FOR. (see Def. Delta's attorney's testimony). As evidenced by authenticated document "ELG124," Eva Lennert Gonzalez that ADRIENNE DANKU, another similarly situated white female flight, who was Eva Lennert Gonzalez' friend "***<u>all she had to do was explain her side on the phone and let go.</u>***"

(SDNY Receipt attached)

27. FSM Mark Sauerwine testified, "I would, um, go to Human Resources. They will usually take it from there. Thats the way we're trained," when asked "If you were to receive a complaint of discrimination... what steps would you take?" Case 1:16-cv-02136-AKH (Document 203, p 9, lines 24-25, p 10, Lines 2-7). Attached hereto as (B-23) is a SDNY Certified copy of Defendant Deltas Rule 56 MSJ in Valerie Carangi v. Delta Airlines. Plaintiff purchased, received, payed and used this Certified copy and has personal knowledge of its authenticity, as does Def. Delta (20-1, 20-2, 20-3, 20-4)

28. FSM Asha Cutting, "There WAS NO TRAINING GIVEN AS SUCH BUT I AM AWARE, OF, um, EQUAL OPPORTUNITY," when asked if there was any equal opportunity training involved with her position. Defendant Charlotte Ling (is) [was] a similarly situated manager as Asha Cutting was, a "FSM".

29. Attached hereto as (B-24) is Valerie Carangi's Deposition excerpts where she, a similarly situated white female, was not removed from Purser program when she had a "CAN," a more severe corrective action in Delta's progressive discipline policy. Plaintiff was told by Valerie Carangi that she was not removed from Purser program when she had "Written Coaching" evidencing Disparate Discipline & Discrimination. Valerie Carangi, a similarly situated white female flight attendant who had a "CAN" (Doc 18, lines 20-26, in Exhibit B-25), the second step in Delta's progressive discipline policy. Debbie Bunch, a white female Base Manager had a meeting with Valerie. Valerie testified "After she" called me & told me that I was going to remain in the Purser program."

See Doc 20-1 p. 38, L 11-25, p. 39, L 2-13),
Even while Valerie, a white similarly situated female flight attendant, was on probation and/or a "CAN", her Purser contract was not terminated.

30. Attached hereto as Exhibit as Exhibit B-25 is Def. Delta's Judicial admission in their Rule 56 Motion for Summary Judgment in Case 1:16-cv-02136-ARH (Doc 49) (p.6 ¶ 27), A "Written Coaching is the First Step in Delta's progressive discipline program but DOES NOT RESULT IN ANY SPECIFIC LOSS OF PRIVILEGES OR COMPENSATION." Def. Delta's attorney Ira Rosenstein made this judicial admission in Valerie Carangi v. Delta (SDNY) Case: 1:16-cv-02136 and Delta won Summary Judgment, Delta is precluded by Judicial Estoppel from objecting to this Judicial Admission. This Judicial Admission is clear and convincing evidence that Def. Ling, Def. Ebert and Def. Delta disparately disciplined Plaintiff because of his race and/or sex (mixed motive perhaps) because of the fact that when Charlotte Ling, Defendant and Courtney Ebert, Defendant issued Plaintiff a "Written Coaching," Plaintiff resulted in "specific loss of privileges" and "compensation."

Federal clerk. Plaintiff bought, used, read, and received the documents from Plaintiff has personal Knowledge of all documents in Exhibit B-23 + B-24, relating to Case 1:16-cv-02136 because Plaintiff has a receipt from SDNY federal court who certified this documents. See last page for SDNY receipt.

31) Attached hereto as Exhibit 26 is the Declaration of Justo Pimentel, Plaintiff's biological father. Plaintiff received this Declaration from Justo Pimentel and has personal knowledge of the facts and photos attached in this exhibit, as Plaintiff has seen them before, used them before, and are of Plaintiff. This is a true and correct copy.

32) Attached hereto as Exhibit 27 is a Certified Copy from SDNY Federal Court of Lauren Heffernan and Kayla Jenkins, two former white female Cargo employees, whose male manager Mike Reve, was constantly masturbating publicly at work, on Delta Airlines office, on their property in front of these 2 female employees, all of the other managers were aware that Mike Reve was routinely publicly masturbating and his public penile mastarbation while working at and on Delta Airlines property, offices, in his capacity, was never considered offensive, lewd, sexual misconduct by Defendant Delta Air Lines, Inc. This Certified Complaint is also a sworn Verified Complaint by Heffernan & Jenkins. Plaintiff was forced to watch female flight attendant, an older white Caucasian similarly situated employee, vaginally masturbate. When Dina Moore continued masturbating in front of small children on the airplane on 08/28/2016, Plaintiff felt compelled to immediately ask her to stop masturbating in front of these small children and to cover her vagina and stop exposing her vagina publicly while at work, as Plaintiff was offended and its wrong to vaginally masturbate in front of children. After Plaintiff filed

an EEOC complaint on 10/02/2016 and sent it to Def. Charlotte Ling on 10/02/2016, Def. Charlotte Ling, on 10/04/2016, materially changed the reason that Plaintiff's Purser promotion contract was terminated on 08/30/2016. On 10/04/2010, Def. Ling specifically stated that plaintiff had no right to speak to a white woman, Dina Moore, the way he did when Plaintiff told her to stop masturbating in front of small children on the airplane because Delta does not prohibit vaginal masturbation in the workplace, as Def. Ling already told Plaintiff in June 2016 that she masturbates vaginally with her "NIGGER" aka "pet rabbit" device and Delta allows her to masturbate in the office. Def. Ling told Plaintiff on 10/04/2016, "You have no right to try to control a white woman's body," and this "Dina Moore incident," which was the vaginal masturbation incident on 08/28/2016 suddenly became Def. Delta's new reason for terminating Plaintiff's Purser promotion contract on 08/30/2016. However, nothing in the "written coaching" (exhibit B) ever said anything about vaginal masturbation, Dina Moore or any incident that happened on 08/28/2016, or the way Plaintiff spoke to a white woman who committed an act of pedophilia by knowingly continuing to vaginally masturbate while children were watching until Plaintiff DEMANDED she stop vaginally masturbating. Exhibit 27 proves Def. Delta ALLOWS masturbation at work

(33) Attached hereto as Exhibit 28 is a Document called "Flight Leader Statement: Your Customer Survey Results (past 12 months). is a Defendant Delta true and correct copy that plaintiff printed on 08/08/2016, to prepare and discuss in his 08/08/2016 Purser Promotion Interview on that same day. Plaintiff has personal knowledge of this document as he printed it from Def. Delta's computer while employed at Delta Airlines in 2016.

This document proves that when Plaintiff was the Flight Leader, who worked exclusively in "Delta One/First Class" the passengers are/were more satisfied with the customer service than they are/were with the "system average." Every one of Plaintiff's scores in every category was higher than the system average and this was the reason Plaintiff was meritoriously selected to form the Purser promotional contract on 08/29/2016, that Def. Ling & Def. Ebert terminated on 08/30/2016 because of Plaintiff's race.

(34) Attached hereto as Exhibit 29 are documents Def. Delta produced during the course of discovery, Plaintiff received these documents from Delta's lawyer, Ira Rosenstein on 10/01/2018. Plaintiff has personal knowledge of these documents because he used, saw, read, and received these documents in 2016, while employed at Delta Air Lines, Inc. These documents pertain to the special damages Plaintiff sustained as a result of Def. Ling & Ebert's discrimination & Def. Wurtz defamation

## LEGAL STANDARD

See Fed.R.Civ.P. 56(c) & (e) (allowing the use of deposition testimony in a summary judgment motion); Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 962 (10th Cir.1993) (holding that deposition testimony is normally inadmissible hearsay when submitted at trial); 8A Wright, Miller & Marcus, Federal Practice & Procedure: Civil § 2142, 164 (2d ed. 1994) ("A deposition is at least as good as an affidavit and should be usable whenever an affidavit would be permissible, even though the conditions of [Fed. R. Civ. P. 32(a)] on use of a deposition at trial are not satisfied.") Federal Rule of Civil Procedure 56(e) does not require that all documents be authenticated through personal knowledge when submitted in a summary judgment motion. Such a requirement is limited to situations where exhibits are introduced by being attached to an affidavit. Compare Fed.R.Civ.P. 56(e) (bearing the heading "Form of Affidavits"), with Fed.R.Evid. 901(b) (providing ten methods to authenticate evidence). For instance, documents attached to an exhibit list in a summary judgment motion could be authenticated by review of their contents if they appear to be sufficiently genuine. See Fed.R.Evid. 901(b)(4)(authenticity may be satisfied by the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."); United States v. Whitworth, 856 F.2d 1268, 1283 (9th Cir.1988) (authenticating letters by the linkage between the dates of postmarks and defendant's location on the days letters mailed); United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1284-85(9th Cir.1983) (authenticating a diary under Rule 901(b)(4) by reviewing its contents); Alexander Dawson, Inc., 586 F.2d at 1302 ("[t]he content of a document, when considered with the circumstances surrounding its discovery, is an adequate basis for [its authentication]").

See Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n. 12 (9th Cir.1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent); Snyder v. Whittaker Corp., 839 F.2d 1085, 1089 (5th Cir.1988) (same); 31 Federal Practice & Procedure: Evidence § 7105, at 39("Authentication can also be accomplished through judicial admissions such as . production of items in response to . [a] discovery request.").Orr v. Bank of America, 285 F. 3d 764 (9th Cir. 2002). H

In a summary judgment motion, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada*, 831 F.2d at 925 (citation omitted). However, a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. *See* Fed.

R. Evid. 901(b)(providing ten approaches to authentication); Fed. R. Evid. 902(self-authenticating documents need no extrinsic foundation).See *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002) (footnotes omitted); *see Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33(9th Cir. 2011) (following *Orr*). *also* Cal. Prac. Guide: Fed. Civ. P. before Trial § 14:170.5 (The Rutter Group 2014) ("Documents obtained in discovery may not be considered unless authenticated by appropriate affidavit or declaration: '[D]ocuments do not automatically become a part of the record simply because they are the products of discovery.'") (quoting *Hoffman v. Applicators Sales & Serv., Inc.*, 439 F.3d 9, 15 (1st Cir. 2006); id. at § 14:181.7).
); Fed. R. Evid. 902 (self-authenticating documents need no extrinsic foundation)); *cf. id.* at 777 (discovery documents could not "be authenticated by way of production in discovery because Mirch has not identified who produced them, and BOA has not admitted to having produced them") (citing *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889n.12 (9th Cir. 1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent); *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1089 (5th Cir. 1988) ("Whittaker's witnesses acknowledged that Underwood was a senior employee of the design department, and Whittaker produced the Underwood notes during discovery. The district court did not err in accepting these facts as adequate authentication, particularly since Whittaker has never claimed that the notes were not Underwood's."); 31 Federal Practice & Procedure: Evidence § 7105, at 39 ("Authentication can also be accomplished through judicial admissions such as . . . production of items in response to . . . [a] discovery request.")).

**As to Depositions**

See Fed.R.Civ.P. 56(c) & (e) (allowing the use of deposition testimony in a summary judgment motion)

**The Court Stamped documents that have a Federal District Court Case Number on top are self-authenticated documents under FR of Evidence Rule 902.** See Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n. 12 (9th Cir.1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent); Snyder v. Whittaker Corp., 839 F.2d 1085, 1089 (5th Cir.1988) (same); 31 Federal Practice & Procedure: Evidence § 7105, at 39("Authentication can also be accomplished through judicial admissions such as . production of items in response to . [a] discovery request.").Orr v. Bank of America, 285 F. 3d 764 (9th Cir. 2002).

**A document *authenticated through personal knowledge* must be attached to an affidavit, and the affiant must be a competent** "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it,

or saw others do so." 31 Wright & Gold, Federal Practice & Procedure: Evidence § 7106, 43 (2000).

**ALL DOCUMENTS THAT BEGIN WITH "DELTA00…."** are documents that were produced by Defendant Delta Air Lines, Inc in the ordinary course of discovery and received by Plaintiff from Defendant Delta Air Lines, Inc's attorney Ira Rosenstein on October 1, 2018. Plaintiff has an email proving he received these from Morgan Lewis & Bockius law firm, who represents Defendant Delta Air Lines, Inc. Plaintiff has personal knowledge of these documents to the extent that he saw, received, and used them since 2018, while litigating against Defendant Delta Air Lines, Inc. See 31 Wright & Gold, Federal Practice and Proc: Evidence § 7105 ("[a]uthentication can also be accomplished through judicial admissions such as stipulations, pleadings, and production of items in response to subpoena or other discovery request"). The fact that these Delta documents which are BATES STAMPED WITH "DELTA000000" in the lower right hand corner, were produced by Defendant Delta Air Lines, Inc, who is Plaintiff's adversary, in the course of discovery, are admissible because both parties have admitted that they were produced by Defendant Delta Air Lines, Inc. and agree they are true and correct copies. Both parties, Plaintiff and Def. Delta Air Lines, Inc., have personal knowledge that these documents are from Def. Delta Air Lines, Inc. who alleges these are true and correct copies.

Def. Eileen Brashares has No admissible evidence that Chris Catania was onboard Delta Flight 2262 on 10/29 2016.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746, and the laws of the State of California that the foregoing is true and correct.

DATED this 28th day of February, 2020

BY: AASIR AZZARMI, IN PRO PER

Plaintiff also testifies that he is a private figure and has never been a public figure, Plaintiff does not even engage in any type of social media.